**Ralph W. VIGUERS as Personal Representative of the Estate of Aurelia P. Viguers, Appellant,**

v.

**PHILIP MORRIS USA, INC., Appellee.**

Superior Court of Pennsylvania.

Argued March 27, 2003.

Filed Nov. 24, 2003.

Stephen W. Wilson, Philadelphia, for appellant.

Robert C. Heim, Philadelphia, for appellee.

BEFORE: JOYCE, ORIE MELVIN and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 We decide, *inter alia,* whether the trial court erred in granting summary judgment and dismissing this products liability and negligence action against the defendant cigarette manufacturer. We affirm.

¶ 2 Plaintiff-appellant Ralph Viguers and his wife, the decedent Aurelia Viguers, filed this action against defendant-appellee Philip Morris, Incorporated (PMI). The complaint included claims of strict liability, negligence and conspiracy based on the alleged defectiveness of PMI's product, Parliament cigarettes, which Aurelia Viguers smoked from 1957 until 1985 or 1987. Aurelia died of lung cancer caused by cigarette smoking in 2000, and her husband continued this action on her behalf. Upon motions for summary judgment filed by PMI, the trial court dismissed the lawsuit and this timely appeal followed.[1]

¶ 3 In his appeal, Ralph Viguers argues that the trial court erred in: 1) finding as a matter of law that the evidence of record rebuts the presumption that the decedent would have heeded an adequate warning of the health hazards of using PMI's cigarettes;[2] 2) striking all parts of Dr. Fein-

---

1. PMI filed a Motion for Summary Judgment as to Strict Liability, Negligence, Loss of Consortium and Punitive Damages, a Motion for Summary Judgment as to Civil Conspiracy, and a Motion for Summary Judgment as to Preempted Claims for failure to warn after 1969. All of these were granted. In addition, PMI filed a Motion to Strike Affidavits of appellant's expert witness, which was also granted.

2. We note that the failure to warn claim must be limited to PMI's alleged failure to warn *before 1969* only, because after 1969, the federal government mandated that cigarette manufacturers provide warnings of the dangers of cigarette smoking, and any claims of negligent failure to warn were thereafter preempted by the federal law. Section 1334(b) of the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331–1341, provides:

No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

*See also Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 524, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (State failure to warn claims are preempted to the extent they require a showing that the manufacturers' post–1969 advertising or promotion should have included additional or more clearly stated warnings); *Hite v. R.J. Reynolds Tobacco Co.,* 396 Pa.Super. 82, 578 A.2d 417 (1990) (smoker's state tort claim for failure to warn was preempted by federal law first enacted in 1966 and amended in 1969; he had not started smoking defendant's brand until 1970). The warning originally required by the 1966 federal law stated: "Caution: Cigarette Smoking May Be Hazardous to Your Health." The

gold's affidavit and dismissing all of appellant's claims arising out of the defective design of PMI's cigarettes; 3) finding that the record evidence is insufficient as a matter of law to sustain a cause of action for civil conspiracy; and 4) dismissing appellant's complaint in its entirety despite the fact that at least one claim set forth in the complaint remains.

¶ 4 Our scope of review in an appeal from summary judgment is plenary. *Lange v. Burd,* 800 A.2d 336, 338 (Pa.Super.2002). We must view the record in the light most favorable to the non-moving party and determine whether the moving party has established that there exists no genuine issue of material fact and that it is therefore entitled to judgment as a matter of law. *Id.* (quoting from *Davis v. Resources for Human Development Inc.,* 770 A.2d 353, 356–57 (Pa.Super.2001)).

¶ 5 Appellant's first argument is based on the existence and application of a "heeding presumption" within the context of his failure to warn claim. Pennsylvania courts have not applied a "heeding presumption" in tobacco cases. However, in a recent asbestos products liability case, we held that:

> in cases where warnings or instructions are required to make a product non-defective and a warning has not been given, the plaintiff should be afforded the use of the presumption that he or she would have followed an adequate warning, and that the defendant, in order to rebut that presumption, must produce evidence that such a warning would not have been heeded.

*Coward v. Owens–Corning Fiberglas Corp.,* 729 A.2d 614, 621 (Pa.Super.1999) (citing *Coffman v. Keene Corp.,* 133 N.J.

581, 628 A.2d 710 (1993)), *appeal granted,* 560 Pa. 705, 743 A.2d 920 (1999). The presumption would be particularly useful in a case such as this one, where the plaintiff died before testifying that she would have heeded a warning had it been provided by the defendant product manufacturer. Without such testimony, a plaintiff cannot establish causation in a failure to warn claim.

¶ 6 Nonetheless, this so-called "heeding presumption" has been authorized in Pennsylvania only in cases involving workplace exposure to asbestos. *Coward, supra. See also Lonasco v. A–Best Products Co.,* 757 A.2d 367 (Pa.Super.2000) (heeding presumption applied, and was not rebutted by defendant asbestos manufacturer). In these situations "the plaintiffs were exposed in the course of their employment under circumstances that provided them no meaningful choice of whether to avoid exposure." *Coward,* 729 A.2d at 620. We recognized that "the burden of production currently applicable to strict liability cases poses potential inequity in the context of toxic substance cases where the plaintiff faced exposure in the course of his employment." *Id.*

¶ 7 We consider whether the "heeding presumption" is applicable in the very different context of this tobacco case, and conclude that it is not. We further hold that even if it were applicable, appellant has not satisfied his burden under it.

¶ 8 Many courts that have adopted the "heeding presumption" have found a rationale for its use in comment j to section 402A of the Restatement (Second) of Torts. *See Coffman,* 133 N.J. at 601, 628 A.2d at 720 (collecting cases). Comment j provides that "[w]here a warning is given,

warning required by the 1969 amendment stated: "Warning: The Surgeon General Has Determined That Cigarette Smoking Is Dangerᴄ ıs to Your Health." *Hite,* 578 A.2d at 419 n. 3.

the seller may reasonably assume that it will be read and heeded." *Coward*, 729 A.2d at 619. Cases adopting the presumption find that the language of comment j gives an evidentiary advantage to the defense. Although the Restatement itself does not give a corollary advantage to the plaintiff when no warnings or inadequate warnings have been given, courts have engrafted such an advantage onto the Restatement language by case law establishing the "heeding presumption." This extension has been based on public policy.

¶ 9 The only cases in Pennsylvania to address the heeding presumption involve injury from work related asbestos exposure, and a strong public policy argument can be made for its application in those cases. *Lonasco, supra; Coward, supra.* Plaintiffs who are exposed to asbestos and other products as a condition of their employment have little choice but to be in an environment where the asbestos or other products are present; therefore, public policy would favor the application of an evidentiary presumption in their favor where no or inadequate warnings are given.

■ ¶ 10 However, in other situations where the plaintiff is not forced by employment to be exposed to the product causing harm, then the public policy argument for an evidentiary advantage becomes less powerful. We therefore hold that the heeding presumption does not apply in the context of this case, which involves the voluntary choice of a smoker to begin and continue smoking tobacco.

■ ¶ 11 But even assuming *arguendo* that the presumption applies in this case, we agree with the trial court that the presumption was rebutted by uncontradicted evidence that Aurelia Viguers would not have heeded a warning had it been given prior to 1969.

Accordingly, if the defendant produces evidence that the injured plaintiff was "fully aware of the risk of bodily injury, or the extent to which his conduct could contribute to that risk," then the presumption is rebutted and the burden of production shifts back to the plaintiff to produce evidence that he would have acted to avoid the underlying hazard had the defendant provided an adequate warning.

*Coward,* 729 A.2d at 622. In order to rebut the heeding presumption, the defendant need only produce evidence "sufficient to support a finding contrary to the presumed fact." *Id.* at 621. In this case, the record contained evidence that Aurelia Viguers continued smoking long after federally-mandated warnings of the dangers of cigarette smoking appeared on packages in 1969. Indeed, she did not quit smoking until 1985 or 1987.

■ ¶ 12 In addition, there was extensive record evidence that, during the relevant period between 1957 and 1969, common public knowledge included the awareness that cigarette smoking could be habit forming and could cause lung cancer. The available testimony also showed that Aurelia Viguers was a well-educated, well-informed person who at one time worked for the Philadelphia Tuberculosis and Health Society (which later became the American Lung Association),[3] and that she was no less knowledgeable than the general public about the dangers of smoking. There is "no duty to warn potential users of that which is known to most people." *Dauphin Deposit Bank &*

---

**3.** Appellant Ralph Viguers continued to work for the organization as a fund raiser for 30 years.

*Trust Co. v. Toyota Motor Corp.*, 408 Pa.Super. 256, 596 A.2d 845, 849 (1991). *See also Fletcher v. Raymond Corp.*, 424 Pa.Super. 605, 623 A.2d 845, 848 (1993) (duty to warn does not require that a manufacturer warn of obvious dangers which are generally known and recognized).

¶ 13 The trial court correctly held that this evidence, in addition to the fact that Aurelia Viguers continued smoking for some 20 years after federally mandated warnings appeared, adequately rebutted any presumption that she would have quit smoking if appellee had earlier warned of the dangers of its product. The burden of proof then shifted back to appellant to show that warnings would have changed Aurelia's behavior, and we affirm the trial court's decision that appellant did not produce evidence to meet this burden as a matter of law.

¶ 14 Next, appellant argues the trial court improperly struck the affidavit of his only expert on defective design, Dr. Allan Feingold. Without this evidence, appellant could not carry his burden of proof on the strict liability claim. *See Hite v. R.J. Reynolds Tobacco Co.*, 396 Pa.Super. 82, 578 A.2d 417 (1990) (plaintiff did not show that a better design was available for defendant cigarette manufacturer's product, and that it was thus defective; strict liability does not attach on mere basis that defendant's product is "inherently dangerous").

¶ 15 We recognize a liberal standard for admission of expert testimony:

To be qualified to testify in a given field, a witness needs only to possess more expertise than is within the ordinary range of training, knowledge, intelligence, or experience. Ordinarily, therefore, the test to be applied is whether the witness has a reasonable pretension to specialized knowledge on the subject matter in question.

*Flanagan v. Labe*, 547 Pa. 254, 690 A.2d 183, 185 (1997). However, even physicians have been held unqualified to testify in specialty areas in which they are not experienced or educated. *See, e.g., Yacoub v. Lehigh Valley Med. Associates*, 805 A.2d 579 (Pa.Super.2002) (neurosurgeon not qualified to give opinion on internal medicine or nursing); *Dierolf v. Slade*, 399 Pa.Super. 9, 581 A.2d 649 (1990) (orthodontist not qualified to give opinion regarding leg surgery).

¶ 16 Feingold, a medical doctor, would have testified in pertinent part that: 1) PMI's Parliament cigarettes are defective and unreasonably dangerous because they deliver excessive amounts of carcinogens and other harmful ingredients, they are engineered for inhalation, and they deliver harmful and addictive quantities of nicotine; 2) the medical literature contains abundant references to the various methods that were available to PMI to reduce its cigarettes' harmful potential; and 3) reduced hazard products were feasibly designed and sold.[4] However, the trial court rejected this proposed testimony because Feingold had no expertise in the design and manufacture of cigarettes.

¶ 17 Although Feingold apparently studied the tobacco industry for many years, including articles, journals, public and internal documents relating to the manufacture of cigarettes, and has treated smokers during his career as a pulmonary specialist, we find no error in the trial court's

---

4. We note that appellant points to the fact that non-combustible cigarettes exist, and indeed were manufactured by PMI, as proof that alternative safer designs were feasible. However, we fail to see how these "cigarettes" are an alternative to Parliaments and other combustible brands of tobacco cigarettes.

holding that Feingold was not qualified to give his opinion regarding the defective design of PMI's cigarettes, and the feasibility of safer cigarette alternatives.[5] See Christiansen v. Silfies, 446 Pa.Super. 464, 667 A.2d 396 (1995) (no abuse of discretion in the trial court's ruling that someone with professional training in one field is unqualified to give an opinion in an unrelated area).

¶ 18 Next, appellant argues that the trial court erred when it held that there was insufficient evidence to maintain a cause of action for civil conspiracy to commit fraud.[6] To recover on a claim of fraud, the plaintiff must prove by clear and convincing evidence six elements: 1) a representation; 2) which is material to the transaction at hand; 3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5) justifiable reliance on the misrepresentation; and 6) the resulting injury was proximately caused by the reliance. Debbs v. Chrysler Corp., 810 A.2d 137, 155 (Pa.Super.2002) (citations omitted). Concealment of a material fact can amount to actionable fraud if the seller intentionally concealed a material fact to deceive the purchaser; however, mere silence without a duty to speak will not constitute fraud. Debbs, 810 A.2d at 155 (citations omitted).

¶ 19 Appellant's claim of conspiracy to commit fraud fails for the same reason appellant's claims of negligence and strict liability fail: appellant did not make out his case that a failure to warn (and even a fraudulent failure to do so), or that a defectively designed cigarette (even fraudulently so designed), caused Aurelia Viguers's illness and death. Moreover, there is no evidence that she relied on PMI's advertising, or alleged pre–1969 silence regarding the dangers of smoking, to continue smoking. Therefore, two of the elements required to make out a claim for fraud, justifiable reliance and proximate causation of damages, are simply not met here. We therefore find no error in the trial court's decision to dismiss the conspiracy claim.

¶ 20 Finally, appellant asserts that the trial court erred in dismissing the complaint in its entirety when a claim for "negligent failure to test" remains extant, and also that the claims for punitive damages and loss of consortium survive if we were to reverse the trial court's dismissal of the negligence and strict liability claims. The latter argument obviously fails be-

---

**5.** Appellant's own expert pathologist conceded that cigarette design is a field far removed from medicine, and requires knowledge of tobacco processing, paper design, filters, aerodynamics and organic chemistry. In Feingold's own testimony, he admitted that he is not an expert in the "manufacture" or "design process" of cigarettes, although he is an expert in "the consequences of cigarettes" on his patients. He has never designed cigarettes and has not invented a new cigarette design, nor does he have knowledge of the state of technological research within the tobacco industry. In addition, though their decisions are not binding on us, other courts have similarly determined that Dr. Feingold was unqualified to give an opinion on cigarette design defect.

Estate of White v. R.J. Reynolds Tobacco Co., 109 F.Supp.2d 424 (D.Md.2000); Blue Cross & Blue Shield v. Philip Morris Inc., 2000 WL 1880283 (E.D.N.Y. Dec.27, 2000); In re: Kings County Tobacco Litigation, Civ. Action No. 42821/87 (N.Y. Sup. Kings County, Mar. 16, 2000).

**6.** PMI argues that appellant did not make a proper claim for fraud in his complaint. Our review of the complaint reveals that, although there is no separately named count for "fraud," the facts enumerated in the civil conspiracy claim do describe alleged incidents of misrepresentation, false statements and omission, upon which appellant claims his wife relied.

cause we have upheld the grant of summary judgment on the claims of negligent failure to warn and strict products liability.

¶ 21 In addition, the claim for "negligent failure to test" is not a viable cause of action recognized by our courts, and we have found no "duty to test" that would be the basis of such a claim. *See, e.g., Oddi v. Ford Motor Co.,* 234 F.3d 136, 143–44 (3d Cir.2000) (plaintiff's negligent failure to test claim is nothing more than a routine products liability case; plaintiff still must establish a design defect in order to recover); *Shires v. Celotex Corp.,* 1988 WL 1001970, *2 (E.D.Pa. Mar.30, 1988) (any duty defendants may have had to test their cigarettes would appear logically subsumed within plaintiff's defective design or defective manufacture claims; it is the flawed design that allegedly injured the plaintiff, not the failure to test). We therefore find no error in the trial court's decision to dismiss appellant's complaint in its entirety, including the claim for negligent failure to test.

¶ 22 Finding no reversible error by the trial court, we affirm the order striking Dr. Feingold's affidavit, granting appellee's motions for summary judgment, and dismissing appellant's complaint.

¶ 23 Order affirmed.