Patsy LANCE, Administratrix for the
Estate of Catherine Ruth Lance,
Deceased, Appellant

v.

WYETH, f/k/a, American Home
Products Corporation,
Appellee.

Superior Court of Pennsylvania.

Argued June 22, 2010.

Filed Aug. 2, 2010.

Reargument Denied Oct. 1, 2010.

Howard J. Bashman, Willow Grove, for appellant.

Michael T. Scott, Philadelphia, for appellee.

BEFORE: STEVENS, GANTMAN and ALLEN, JJ.

OPINION BY ALLEN, J.:

¶ 1 Plaintiff, Patsy Lance ("Appellant"), Administratrix for the Estate of Catherine Ruth Lance ("Lance"), appeals from the trial court's order granting summary judgment in favor of Wyeth, formerly known as American Home Products Corporation ("Wyeth"). We affirm in part and reverse in part.

¶ 2 In her short form complaint, Appellant alleged that Wyeth was negligent in placing an unreasonably dangerous prescription drug on the market and in failing to withdraw it upon discovering that it was unsuitable for public consumption. R.R. at 18. Appellant also asserted that Wyeth breached the standard of care in designing, developing, inspecting, testing and preparing the drug. R.R. at 45. The trial

court concluded that Appellant failed to present a cognizable claim under Pennsylvania law.

¶ 3 The trial court set forth the facts and procedural history of this case as follows.

[Appellant] is a resident of the State of Ohio who alleges her daughter, decedent [Lance], ingested [Wyeth's] diet drug, Redux, from approximately January 15, 1997 to April 1997. Redux is prescribed to treat cases of obesity. The physicians who prescribed Redux to Lance for her obesity were Dr. John Imm, M.D., and Jim Doone, M.D., from Community Health Partners in Fremont, Ohio. The [Food and Drug Administration] ("FDA") approved Redux as "safe and effective" on April 29, 1996, and the FDA continued to approve Redux after [Lance] stopped using it. Lance ingested the drug for approximately three (3) months before discontinuing its use. [On September 15, 1997, Wyeth voluntarily withdrew Redux from the market because of the risk that the drug may cause valvlular heart disease.]

On or around November 15, 2004, more than seven (7) years after Lance discontinued using Redux, she was diagnosed with Primary Pulmonary Hypertension ("PPH") by Dean M. Bernardo, M.D. At that time[,] Lance first suspected that her ingestion of diet drugs was related to her diagnosis. Although Lance died in December 2004, the cause of her death is at issue and contested by the parties.

[Appellant] instituted the within Phen–Fen Mass Tort action by Short Form Complaint filed on November 13, 2006. [Appellant] alleged that on November 15, 2004, Lance was diagnosed with PPH as a result of her ingestion of ... Redux.

[I]n her Short Form Complaint, [Appellant included] an "Addendum of Additional Allegations" for "clarification of her claims." [Appellant] stated that her negligence claim was based on "Unreasonable Marketing of a Dangerous Drug and Unreasonable Failure to Remove the Drug from the Market before January 1997." Additionally, [Appellant] explicitly stated that she was making "No Inadequate Labeling Claims."

[Appellant's] Complaint, although alleging Wyeth was negligent in marketing Redux, faile[d] to allege that any marketing of Redux by Wyeth was relied upon by [Lance] and influence[d] her decision to request that she be prescribed Redux from her physicians.

[As part of her short from complaint, Appellant also adopted the negligence count of the master complaint. R.R. at 17. In particular, Appellant alleged that Wyeth breached the standard of care in designing, developing, inspecting, testing and preparing Redux. R.R. at 45.]

Trial Court Opinion (T.C.O.), 1/07/10, at 1–2 (citations and footnotes omitted).

¶ 4 On March 6, 2008, Wyeth filed a motion for summary judgment, contending that as a matter of law, Appellant did not assert a cognizable claim. In particular, Wyeth argued that in Pennsylvania, a plaintiff can only recover from a drug manufacturer by proving either that the drug had a manufacturing defect or an inadequate warning. Wyeth maintained that because Appellant did not aver a manufacturing defect claim and admitted that her negligence claim was not based on a failure to warn, Appellant failed to plead a valid cause of action.

¶ 5 In opposition, Appellant conceded that she was not asserting a failure to warn claim. Appellant, however, argued that Wyeth was negligent in placing an unreasonably dangerous product into the market. Appellant further asserted that Wyeth was negligent in failing to properly

test Redux before the FDA approved the drug and in failing to withdraw Redux from the market after discovering that it was unreasonably dangerous. Finally, Appellant proposes that she advanced a viable negligent design defect claim. On these grounds, Appellant submitted that her claims were actionable under Pennsylvania law.

¶ 6 On September 19, 2008, the trial court granted summary judgment in favor of Wyeth. The trial court concluded that as a matter of law, Appellant failed to plead a cognizable cause of action. This appeal ensued.

¶ 7 Appellant raises the following issue for review:

> Did the trial court err as a matter of law in holding on summary judgment that Pennsylvania law would not recognize plaintiff's claims that Wyeth was negligent in bringing Redux to the market and in failing to withdraw Redux from the market before the drug was prescribed to plaintiff's decedent, [ ] Lance?

Brief for Appellant at 3.

¶ 8 We review a grant of summary judgment under the following well-settled standards:

> Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontraverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

*Wright v. Allied Signal, Inc.*, 963 A.2d 511, 514 (Pa.Super.2008) (citation omitted).

¶ 9 Here, Wyeth did not claim that Appellant was unable to adduce evidence sufficient to establish a *prima facie* case. Rather, Wyeth argued that as a matter of law, Appellant failed to allege a cognizable cause of action in her complaint. As such, this Court is presented with a pure question of law, *i.e.*, whether Appellant pursued a viable cause of action.[1]

¶ 10 According to the short form complaint, Appellant asserted three legal claims. First, Appellant asserted a claim for "Negligence—Unreasonable Marketing of a Dangerous Drug." R.R. at 18. To support this claim, Appellant alleged, *inter alia*, that "Redux was so unreasonably dangerous and defective in design that it never should have been on the market."

1. We note that Wyeth filed its motion for summary judgment prior to filing an answer to Appellant's complaint. Indeed, because the trial court granted Wyeth summary judgment, Wyeth did not file an answer at all. Therefore, although this case was disposed of on summary judgment, the procedural posture indicates that Wyeth's motion for summary judgment was more akin to a preliminary objection in the nature of a demurrer, challenging the legal sufficiency of the complaint. *See Reed v. Dupuis*, 920 A.2d 861, 864 (Pa.Super.2007) (setting forth the standard of review from an order granting a preliminary objection in the nature of a demurrer).

R.R. at 19. Second, Appellant averred a claim for "Negligence—Unreasonable Failure to Remove [Redux] from the Market before January 1997." R.R. at 18. In support of this claim, Appellant contended that Wyeth was negligent in failing to withdraw Redux after discovering in 1994 that the drug was associated with heart valve disease. R.R. at 19. Third, Appellant raised a standard negligence count; in this claim, Appellant alleged that Wyeth breached the standard of care in designing, developing, inspecting, testing and preparing Redux. R.R. at 45.

¶ 11 Appellant first argues that the trial court erred in granting summary judgment on her "Unreasonably Marketing of a Dangerous Drug" claim. Appellant maintains that Wyeth was negligent in placing an unreasonably dangerous drug on the market and contends that the overall risks of Redux outweighed the drug's benefits for any class of persons. In addition, Appellant asserts that Redux was unreasonably dangerous because it was defective in design and chemical composition. Appellant proposes that Pennsylvania law recognizes this type of claim as a legal basis for relief. Finding that Appellant's purported cause of action is a design defect claim sounding in products liability, we do not agree.

■ ¶ 12 In *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), our Supreme Court adopted The Restatement (Second) of Torts § 402A. This section governs products liability claims and allows recovery where a product causes harm to a plaintiff and is in "a defective condition unreasonably dangerous to the consumer or user[.]" Restatement (Second) of Torts, § 402A(1). In general, there are three types of defective conditions which may give rise to strict liability: a manufacturing defect, a design defect, and a failure to warn defect.

*Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

¶ 13 In Pennsylvania, however, products liability law is superseded as it applies to prescription drugs. In *Hahn v. Richter*, 543 Pa. 558, 673 A.2d 888, 889–90 (1996), our Supreme Court continued to "den[y] application of strict liability to products such as prescription drugs, which, although dangerous in that they are not without medical risks, are not deemed defective and unreasonably dangerous when marketed with proper warnings." *Id.* Relying on previous case law, our Supreme Court in *Hahn* adopted comment k of the Restatement (Second) of Torts, § 402A. In pertinent part, comment k provides:

> k. *Unavoidably unsafe products.* There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs.... Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous.... The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

Restatement (Second) of Torts, § 402A cmt. k (emphasis in original).

■ ¶ 14 Due to the inherent risks and dangers associated with prescription drugs, our Supreme Court has limited the potential causes of action available to a plaintiff who alleges a strict liability claim against a drug manufacturer. In particu-

lar, a plaintiff may advance only two possible strict liability claims: (1) a manufacturing defect claim, or (2) a failure to warn claim. *Baldino v. Castagna,* 505 Pa. 239, 478 A.2d 807, 810 (1984) ("[A]ssuming proper preparation and warning, a manufacturer of drugs is not strictly liable for unfortunate consequences attending the use of otherwise useful and desirable products which are attended with a known but apparently reasonable risk."). If a plaintiff asserts a failure to warn claim under § 402A, strict liability will not be imposed upon the drug manufacturer. Rather, pursuant to *Hahn,* the failure to warn claim will be analyzed and adjudicated in accordance with the negligence standard contained in the Restatement (Second) of Torts, § 388. *Hahn,* 673 A.2d at 890–91.

¶ 15 Here, Appellant did not allege that Redux contained a manufacturing defect or inadequate warnings. Instead, Appellant argues that Redux was "unreasonably dangerous" and that the drug's "risks outweighed its benefits as to all possible classes of users of that medication." Brief for Appellant at 14. Although Appellant labels her claim as "negligent and unreasonable marketing," her proposed cause of action duplicates a design defect claim, seeking to impose strict liability on Wyeth because Redux was unreasonably dangerous. *See Fitzpatrick v. Madonna,* 424 Pa.Super. 473, 623 A.2d 322, 324–26 (1993) (discussing strict liability design defect claims). With our Supreme Court's adoption of comment k, a design defect claim for strict liability is not cognizable under Pennsylvania law when it is asserted against a manufacturer of prescription drugs.[2] For purposes of strict liability and § 402A, a drug cannot be deemed unreasonably dangerous, even if it is defectively designed, so long as the drug is manufactured properly and contains adequate warnings. Restatement (Second) of Torts, § 402A cmt. k (stating that a prescription drug "properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous.") (emphasis in original).[3] As noted above, Appellant did not allege that Redux contained a manufacturing defect or inadequate warnings. The trial court, therefore, did not err in granting summary judgment in favor of Wyeth on Appellant's "Unreasonable Marketing" claim to the extent that it averred a strict liability design defect claim.

¶ 16 Appellant next argues that she asserted a cognizable negligent design defect claim. Here, in the incorporated long form complaint, Appellant included an allegation that Wyeth breached the standard of care in designing Redux. R.R. at 45. We agree with Appellant that notwithstanding comment k in § 402A, this claim is actionable under Pennsylvania law.

¶ 17 It is important to note that a negligent design claim is not foreclosed merely because summary judgment is

2. Although some jurisdictions employ a case-by-case approach to decide whether to apply comment k to a particular drug, *see, e.g., Castrignano v. E.R. Squibb & Sons, Inc.,* 546 A.2d 775 (R.I.1988), Pennsylvania is one of the few jurisdictions that afford comment k protection to all prescription drugs as a matter of law. *Castagna,* 478 A.2d at 810; *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206, 220–21 (1971).

3. "By its own terms, comment k excepts 'unavoidably unsafe' products from liability for design defects.... Thus, once comment k is applied, all questions of a product's design become irrelevant and the focus shifts to the adequacy, or reasonableness, of the warning of the product's risks." Carla Herron and Kelli DeGeeter, *Can Texas Escape the Unavoidably Unsafe Medicine of Comment k by Adopting Section 8 of the Proposed Third Restatement of Torts?,* 49 Baylor L.Rev. 73, 78–79 (1997).

granted in favor of a defendant on a plaintiff's strict liability claim. *Phillips v. Cricket Lighters*, 576 Pa. 644, 841 A.2d 1000, 1008 (2003) (plurality). This is because a strict liability design defect claim is distinct from a negligence design defect claim. *Id.* "Strict liability examines the product itself, and sternly eschews considerations of the reasonableness of the conduct of the manufacturer." *Id.* "In contrast, a negligence cause of action revolves around an examination of the conduct of the defendant." *Id.*

¶ 18 The Restatement (Second) of Torts, § 395 addresses a manufacturer's negligent design of products. Unlike comment k in § 402A, this provision contains no exemption or special protection for prescription drugs. *See* Restatement (Second) of Torts § 395 cmt. f (adopting rule of negligence liability for product design without any reference to drugs or comment k). In *Toner v. Lederle Labs.*, 112 Idaho 328, 732 P.2d 297, 309–10 (1987), the Supreme Court of Idaho aptly explained why a negligent design claim is not precluded by comment k:

In a literal sense, comment k, when applicable, quite clearly does not act as a bar to negligence claims. By its own terms, the comment only bars claims that the product's design was 'defective' and *'unreasonably* dangerous' (emphasis original)—in other words, strict liability claims. The comment expressly states that the seller of 'unavoidably unsafe' products 'is not to be held to strict liability for unfortunate consequences attending their use. . . .' The authorities universally agree that where a product is deemed unavoidably unsafe, the plaintiff is deprived of the advantage of a strict liability cause of action, but may proceed under a negligence cause of action.

By denying plaintiffs recovery based on the dangerousness of the product and requiring plaintiffs to prove negligent conduct on the part of the defendants, comment k furthers the policy of encouraging the production and marketing of useful products. However, to immunize sellers of products deemed unavoidably unsafe pursuant to comment k from negligence claims would remove needed incentive for safe design.

*Id.* (citations omitted).

¶ 19 Likewise, in *Artiglio v. Superior Court*, 22 Cal.App.4th 1388, 1393, 27 Cal. Rptr.2d 589 (1994), an intermediate court of appeals for the State of California concluded that under comment k, "[l]iability for defective design could not be premised on strict liability, but would require proof of negligence." Indeed, § 402A expressly limits its application to strict liability claims and does not bar negligence claims: "The rule [of strict liability] stated here is not exclusive, and does not preclude liability based upon the alternative ground of negligence of the seller, where such negligence can be proved." Restatement (Second) of Torts § 402A cmt. a.

¶ 20 Therefore, comment k is confined to strict liability claims and has no application to claims sounding in negligence. Pursuant to Pennsylvania law, a negligent design defect claim is considered to be distinct from, and not subsumed within, a strict liability design defect claim. Consequently, Appellant's negligent design claim is not precluded by comment k, and is a valid cause of action upon which relief may be granted. The trial court thus erred in entering summary judgment in favor of Wyeth on Appellant's negligent design defect claim.

■ ¶ 21 In addition, Appellant argues that her claim for negligent failure to withdraw/recall Redux from the market was cognizable under Pennsylvania law. According to Appellant, Wyeth did not adequately evaluate reports of health prob-

lems associated with Redux and should have withdrawn and/or recalled Redux from the market before it was prescribed to her. Appellant's assertion lacks merit.

¶ 22 In *Lynch v. McStome & Lincoln Plaza Assoc.*, 378 Pa.Super. 430, 548 A.2d 1276, 1281 (1998), this Court refused to recognize a duty to retrofit a product. Following the natural direction of *Lynch*, this Court is persuaded by the majority of modern jurisdictions that have decided not to impose a common law duty to recall on a manufacturer. *See, e.g., Ford Motor Co. v. Reese*, 300 Ga.App. 82, 684 S.E.2d 279, 283–85 (2009); *Stanger v. Smith & Nephew, Inc.*, 401 F.Supp.2d 974, 982 (D.Mo. 2005); 47 ALR 5th 395, § 2(a) (1997) (compiling cases and concluding that "[t]he majority of courts refuse to extend upon the manufacturer the duty to repair or remedy its product postsale."). As the court in *Reese* explained, public policy considerations weigh heavily against imposing a duty to recall on a manufacturer:

> Because the cost of locating, recalling, and replacing mass-marketed products can be enormous and will likely be passed on to consumers in the form of higher prices, the recall power should not be exercised without extensive consideration of its economic impact. Courts, however, are constituted to define individual cases, and their inquiries are confined to the particular facts and arguments in the cases before them. Decisions to expand a manufacturer's post-sale duty beyond making reasonable efforts to warn product users about newly discovered dangers should be left to administrative agencies, which are better able to weigh the costs and benefits of such action.

684 S.E.2d at 285 (quoting Victor Schwartz, *The Post–Sale Duty to Warn: Two Unfortunate Forks in the Road to a Reasonable Doctrine*, 58 N.Y.U. L. Rev. 892, 901(I) (1983)).

¶ 23 In the absence of a state statute or administrative directive mandating a recall, we decline to impose upon a drug manufacturer a common law duty to recall a drug. Although the FDA does not have the authority to recall prescription drugs, it is vested with the power to withdraw approval of prescription drugs, thus precluding the manufacturer from legally marketing a drug. 21 U.S.C.A. § 355(e). As such, the FDA's power to withdraw approval of a prescription drug is analogous to the power to recall.

¶ 24 Here, on April 29, 1996, the FDA approved Redux as "safe and effective." After Appellant stopped ingesting Redux in April 1997, the FDA continued to approve the drug. Consistent with the practice of other courts, we defer to the federal regulatory scheme and the FDA's decision as to whether a drug should lawfully remain on the market. *See, e.g., Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 25 Cal.Rptr.2d 97, 863 P.2d 167, 177–78 (1993) ("We conclude … that defendant may not be held liable for failing to withdraw its product from the market…. Pending completion [of studies linking aspirin with Reye's syndrome], the FDA concluded that product warnings were an adequate public safety measure. Although the FDA's conclusion is not binding on us, we think it deserves serious consideration."). Therefore, during the time-frame in which Appellant ingested Redux, Wyeth did not have a duty to withdraw/recall Redux from the market, because the FDA did not withdraw its approval of Redux.

¶ 25 Moreover, a manufacturer has a post-sale duty to warn of "any dangerous side effects produced by its drugs of which it knows or has reason to know" as long as its drugs are sold on the market. *Barson v. E.R. Squibb & Sons, Inc.*,

682 P.2d 832, 835 (Utah 1984). "The duty is a continuous one, requiring the manufacturer to keep abreast of the current state of knowledge of its products as gained through research, adverse reaction reports, scientific literature, and other available methods." *Lindsay v. Ortho Pharmaceutical Corp.*, 637 F.2d 87, 91 (2d Cir. 1980); *see Schenebeck v. Sterling Drug, Inc.*, 423 F.2d 919, 922 (8th Cir.1970); *Wooderson v. Ortho Pharm. Corp.*, 235 Kan. 387, 681 P.2d 1038, 1050–51 (1984); *Feldman v. Lederle Laboratories*, 97 N.J. 429, 479 A.2d 374, 388–89 (1984). Consequently, a drug manufacturer's post-sale duty to warn of dangerous propensities provides consumers with a remedy and sufficient protection against risks that a manufacturer discovers (or should have discovered) after the drug was placed into the stream of commerce.[4] However, any decision to expand a drug manufacturer's post-sale duty to warn into the arena of a duty to recall/withdraw is left to the FDA, which is better equipped to weigh the benefits and risks associated with permitting a drug to remain on the market.

¶ 26 Given the FDA's regulatory authority and a drug manufacturer's post-sale duty to warn, we conclude that Wyeth did not have a common law duty to recall or withdraw Redux. The trial court did not err in granting summary judgment in favor of Wyeth on Appellant's claim for negligent withdraw and/or recall.

¶ 27 Appellant also maintains that her alleged her causes of action, including her claims for "unreasonable marketing" and "negligent failure to withdraw," are sustainable because they are akin to a failure to inspect and/or test claim. Citing *Hoffman v. Sterling Drug, Inc.*, 485 F.2d 132, 140–41 (3d. Cir.1973), Appellant argues that a failure to test claim is valid cause of action. We disagree.

¶ 28 In *Hoffman*, the United States Court of Appeals for the Third Circuit applied Pennsylvania law and concluded that there was sufficient evidence for the jury to find that the manufacturer failed to adequately test its drug to discover potentially harmful side-effects. 485 F.2d at 140–41. Regardless of the *Hoffman* decision, which is not binding upon this Court, *Trach v. Fellin*, 817 A.2d 1102, 1115 (Pa.Super.2003) (*en banc*), Pennsylvania law has not recognized an independent tort for negligent failure to test. In fact, we have held that "the claim for 'negligent failure to test' is not a viable cause of action recognized by our courts[.]" *Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534, 541 (Pa.Super.2003), *aff'd* 584 Pa. 120, 881 A.2d 1262 (2005).

---

4. In imposing a continuing, post-sale duty to warn on a drug manufacturer, we are cognizant that in *Lynch v. McStome and Lincoln Plaza Associates*, 378 Pa.Super. 430, 548 A.2d 1276 (1988) and *DeSantis v. Frick*, 745 A.2d 624 (Pa.Super.1999), this Court held that there is no post-sale duty to warn about technological advances when a defect did not exist in the product at the time of sale. *Lynch* and *DeSantis*, however, did not address the special circumstances attendant to the marketing, labeling and distribution of prescription drugs. "The duty to warn assumes great significance in ... a case involving pharmaceuticals," *Baker v. St. Agnes Hosp.*, 70 A.D.2d 400, 405, 421 N.Y.S.2d 81 (N.Y.1979), and "it is important to point out that the drug manufacturer is held to be an expert in its particular field." *Barson*, 682 P.2d at 835. Moreover, the FDA's labeling rules require a prescription drug manufacturer to make any changes to its labels to add or strengthen a warning about a possible adverse reaction as soon it has reasonable evidence that the drug or device caused an adverse reaction. 21 C.F.R. § 314.70(c)(6)(iii)(A)-(E). We conclude that *Lynch* and *DeSantis* are inapplicable to the matter at hand, and confine the holdings in those cases to manufacturing operations that do not involve prescription drugs.

¶ 29 If there is a duty to test and/or inspect in Pennsylvania, it does not exist as an independent cause of action, but rather, is subsumed within Appellant's other claims. In *Kociemba v. G.D. Searle & Co.*, 707 F.Supp. 1517, 1527 (D.Min.1989), the court refused to permit a claim based solely on the failure to test. The court explained why the failure to test cannot stand alone as an independent cause of action:

> [T]he reason that manufacturers are under a duty to test their products is to discover defects or dangers associated with use of the products. Once the manufacturer has discovered a defect or danger the manufacturer should either change the product's design or manufacturing process, or warn consumers of the danger associated with using the product.
>
> Thus, unless the manufacturer's breach of its duty to test leads the manufacturer to produce a product that is defective in design, manufacture, or warning, no injury can result. If the manufacturer designs the product safely, manufactures the product safely, and provides an adequate warning of dangers inherent in the use of the product, then a failure to test the product cannot, standing alone, cause any injury. The duty to test is a subpart of the other three duties because a breach of the duty to test cannot by itself cause any injury.

*Id.; accord Adams v. G.D. Searle & Co., Inc.*, 576 So.2d 728, 730 (Fla.Ct.App.2d Dist.1991); *Valentine v. Baxter Healthcare Corp.*, 68 Cal.App.4th 1467, 1485–86, 81 Cal.Rptr.2d 252 (Cal.Ct.App.4th Div.1999); *see also Vassallo v. Baxter Healthcare Corp.*, 428 Mass. 1, 696 N.E.2d 909, 921 (1998) (concluding that breach of duty to test does not create an independent cause of action).

¶ 30 Therefore, even if there is a general duty to inspect and/or test under Pennsylvania law, it would be subsumed within Appellant's design defect claims and/or any potential failure to warn claim that Appellant may have had. Because failure to test is not an independent cause of action in Pennsylvania, Appellant's arguments to the contrary fail.

¶ 31 Finally, Appellant argues that she averred an actionable claim under the Restatement (Third) of Torts: Products Liability § 6(c). Brief for Appellant at 15–16. Our Supreme Court has never adopted this provision, and it runs contrary to law as stated in *Hahn* and the Restatement (Second) of Torts, § 402A. "As an intermediate appellate court, this Court is obligated to follow the precedent set down by our Supreme Court. It is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to the Supreme Court." *Moses v. T.N.T. Red Star Express*, 725 A.2d 792, 801 (Pa.Super.1999) (citations omitted). "Until and unless our Supreme Court alters its approach to strict liability, we will continue to adhere to established principles." *Bugosh v. Allen Refractories Co.*, 932 A.2d 901, 911 (Pa.Super.2007), *appeal dismissed as improvidently granted in* 601 Pa. 277, 971 A.2d 1228 (2009) (declining to adopt a portion of the Restatement (Third) of Torts: Product Liability because our Supreme Court continues to apply the Restatement (Second) of Torts, § 402A). Because the Restatement (Second) of Torts, § 402A remains the law in this Commonwealth, Appellant's contention does not merit relief.

¶ 32 For the above-stated reasons, we conclude that the trial court did not err in granting summary judgment against Appellant on her claims of "Unreasonable Marketing" and "Unreasonable Failure to

Remove [Redux] from the Market." The trial court, however, erred in granting summary judgment in favor of Wyeth on Appellant's claim for negligent design defect. Accordingly, we affirm in part and reverse in part, and remand for further proceedings.

¶ 33 Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

"Judge GANTMAN Concurs In Result."