**Richard D. HAUN, Appellee**

v.

**COMMUNITY HEALTH SYSTEMS, INC., CHS/Community Health Systems, Inc., Community Health Systems Professional Services Corporation and Phoenixville Hospital Company, LLC, Appellants.**

Superior Court of Pennsylvania.

Argued May 4, 2010.

Filed Jan. 19, 2011.

Reargument Denied March 21, 2011.

against African Americans by using preemptory challenges in jury selection. *Davis*, 916

A.2d at 1209.

Sidney R. Steinberg, Philadelphia, for appellants.

Charles L. Becker, Philadelphia, for appellee.

BEFORE: GANTMAN, SHOGAN and MUNDY, JJ.

OPINION BY SHOGAN, J.:

Community Health Systems, Inc., CHS/Community Health Systems, Inc., Community Health Systems Professional Services Corporation, and Phoenixville Hospital Company, LLC (collectively "Appellants") appeal from the order which partially sustained and partially overruled preliminary objections filed by Appellants in this action brought by Richard D. Haun. We affirm in part and reverse in part.

The trial court summarized the history of this matter as follows:

Defendant Phoenixville Hospital is a Pennsylvania corporation operating a hospital in Phoenixville, Pennsylvania. Phoenixville Hospital is part of the Community Health Systems Group. Defendant Community Health Systems, Inc., [hereinafter "Community Health"], is a Delaware corporation that owns and operates 118 hospitals, including Phoenixville Hospital. Defendant CHS/Community Health Systems, Inc., [hereinafter "CHS/Community Health"] and Defendant Community Health Systems Professional Corporation [hereinafter "Community Health Professional"] are wholly owned subsidiaries of Community Health, which operate and oversee the operations at Community Health's hospitals.[1] Defendant Phoenixville Hospital Company, LLC, [hereinafter "Phoenixville LLC"] is a Delaware LLC, which was formed to purchase substantially all of Phoenixville Hospital's assets. Phoenixville LLC is also a subsidiary of Community Health and/or CHS/Community Health.

[1] Community Health Systems Inc, CHS/Community Health Systems, Inc., and Community Health Systems Professional Corporation shall be referred to as the "Community Health defendants."

From June 2007 until November 12, 2008, Plaintiff Richard Haun served as Chief Financial Officer at Phoenixville Hospital. On August 23, 2007, Haun's wife, Theresa, gave birth to twins, one boy and one girl, at Phoenixville Hospital. The twins were born prematurely and were taken to the Neonatal Intensive Care Unit. While in the Neonatal Intensive Care Unit, the male twin, Drake Haun, became disconnected from

an IV line. The extensive blood loss that occurred due to the disconnected IV caused severe and irreversible injury to Drake's central nervous system.

Richard and Theresa Haun, as parents and guardians of Drake, filed a medical malpractice suit against Phoenixville Hospital, Phoenixville LLC, and a number of doctors and nurses who provided care for Drake. Five days after being served with the Writ of Summons, Marty Smith, Interim President for Division III Operations for the Community Health defendants, sent an email to Steven Tullman, CEO of Phoenixville Hospital, instructing Mr. Tullman to discuss with Rhea Garrett, chief counsel for the Community Health Defendants, the possibility of terminating Haun. On November 12, 2008, Mr. Tullman and Grant Hoffman, Human Resources Director at Phoenixville Hospital, met with Mr. Haun and informed him that he was being fired from the hospital because he was "an adversary of the company and it's too much risk."[2] Haun was then immediately escorted from the building, having been denied the opportunity to collect his personal effects.

---

[2] Complaint ¶ 37

After being fired, Haun filed suit against Phoenixville Hospital, Phoenixville LLC, and the Community Health defendants, alleging 1) wrongful termination in violation of public policy, 2) wrongful termination in violation of the specific intent exception to Pennsylvania's default employee at-will doctrine, and 3) in the alternative, tortious interference with contract by the Community Health defendants. All of the defendants filed preliminary objections. Community Health and CHS/Community Health preliminarily objected on the grounds that this Court lacked personal jurisdiction. All defendants preliminarily objected on the following grounds, a) demurrer to Count I because Haun failed to plead a recognized public policy exception to Pennsylvania's employee at-will doctrine, b) demurrer to Count II on the grounds Pennsylvania law no longer recognizes a specific intent exception to the employee at-will doctrine, c) demurrer to Count III because Pennsylvania Law does not recognize a claim for tortious interference with contract in the context of contracts for employment at-will, and d) the instant matter should be transferred to Chester County on the grounds of *forum non conveniens*.

An evidentiary hearing on the issue of this Court's jurisdiction over Community Health and CHS/Community Health was held on April 20, 2009. On May 15, 2009, the Court issued an Order which dismissed Haun's claim for specific intent wrongful termination and overruled all remaining preliminary objections. Defendants requested this Court certify its order for interlocutory appeal; that request was denied. The defendants then filed a petition for review with the Superior Court, which the Superior Court granted.

Trial Court Opinion, 11/5/09, at 1–3.

Appellants present the following issues for our review:

1. Did the Plaintiff below fail to state a cognizable claim for public policy wrongful discharge under Pennsylvania law where he alleged that his employment was terminated because he brought a medical malpractice cause of action against his employer for alleged malpractice committed against his newborn son?

2. Did the Plaintiff below fail to state a cognizable claim for public policy wrongful discharge under Pennsylvania law where he failed to identify a clear man-

date of Pennsylvania public policy allegedly violated by his discharge?

3. Did the Plaintiff below fail to state a cognizable claim for tortious interference with contractual relations under Pennsylvania law where the contract in question was an existing contract for at-will employment?

Appellants' Brief at 3.

In their first two issues, Appellants challenge the trial court's decision to overrule their preliminary objections in the nature of a demurrer in relation to the first cause of action in Appellee's complaint, which alleged wrongful termination of Appellee's at-will employment in violation of public policy. *See* Appellants' Brief at 11–25. Appellants argue, as they did in their preliminary objections, that Appellant failed to plead a public policy exception to Pennsylvania's at-will employment doctrine.

 Initially, we note that "[o]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court." *De Lage Landen Fin. Servs., Inc. v. Urban P'ship, LLC,* 903 A.2d 586, 589 (Pa.Super.2006).

"Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint." When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Hykes v. Hughes,* 835 A.2d 382, 383 (Pa.Super.2003) (citations omitted).

We have reviewed the briefs of the parties, the relevant law, the certified record before us on appeal, and the opinion authored by the trial court. It is our determination that the trial court's opinion accurately concludes that "[Appellants'] right to a demurrer, at this stage of the proceedings, is not clear and free from doubt. A good faith argument has alleged that [Appellee's] dismissal violated public policy." Trial Court Opinion, 11/5/09, at 7. Likewise, our review of the record leads to the conclusion that doubt exists as to whether Appellants' demurrer to Appellee's claim of wrongful termination of at-will employment in violation of public policy should have been sustained. Thus, we resolve that doubt in favor of overruling the preliminary objections. Accordingly, we adopt the trial court's discussion on these claims of error as our own and affirm the portion of the order overruling Appellants' preliminary objections with regard to the cause of action for wrongful termination on its basis. *See* Trial Court Opinion, 11/5/09, at 5–8.

 We next address Appellants' final claim, wherein they argue that the trial court erred in overruling their preliminary objections in the nature of a demurrer raised in relation to Appellee's third cause of action in his amended complaint, which alleged tortious interference with his employment contract. *See* Appellants' Brief at 8–11. Essentially, Appellants take issue with the trial court's ruling that Appellee's action for intentional interference with a contractual relationship could survive Appellants' preliminary objections. For the reasons that follow, we are constrained to

reverse the trial court's ruling in this matter because Appellee was an at-will employee at the time of the alleged interference.

In *Hennessy v. Santiago*, 708 A.2d 1269, 1279 (Pa.Super.1998), we held that an at-will employee may not sue a third-party for tortious interference with a presently-existing at-will employment contract. Specifically, this Court explained that "an action for intentional interference with performance of a contract in the employment context applies only to interference with a prospective employment relationship whether at-will or not, not a presently existing at-will employment relationship." *Id.* at 1279. Essentially, that interference must induce or cause a third person not to enter into the prospective relationship. *Id.* at 1278 (citation omitted).

In *Hennessy*, the appellant, Margaret Hennessy, a counselor, brought suit against her employer, Dr. Jose Santiago, for wrongful discharge. Ms. Hennessy's complaint also contained a count against Nancy Albert, an administrator for the Mercer County Office of Mental Health and Mental Retardation, for intentional interference with contractual relations. Ms. Hennessy was an existing at-will employee of Santiago. Nonetheless, she brought a claim for intentional interference with contractual relations based on allegations that Ms. Albert instructed Santiago to discharge Ms. Hennessy from her employment with him.

In affirming the trial court's dismissal at the preliminary objection stage of Ms. Hennessy's intentional interference with contract claim, the *Hennessy* panel held the following:

> There are four elements to this cause of action:
>
> (1) the existence of a contractual relationship;

> (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship;
>
> (3) the absence of a privilege or justification for such interference; and
>
> (4) damages resulting from the defendant's conduct.

*Triffin v. Janssen*, 426 Pa.Super. 57, 626 A.2d 571, 574 (1993). The problem for appellant is that, absent a contract, employees in Pennsylvania are considered to be at-will. Therefore, they can be terminated at any time for any reason. *Stumpp v. Stroudsburg Mun. Auth.*, 540 Pa. 391, 396, 658 A.2d 333, 335 (1995).

In her second amended complaint, appellant does not allege that she was a contractual employee. Instead, she attempts to bring herself within the ambit of *Yaindl v. Ingersoll–Rand Co.*, 281 Pa.Super. 560, 422 A.2d 611 (1980). In *Yaindl*, a panel of this court held that a cause of action exists where a person intentionally and improperly interferes with "another's prospective contractual relation." *Id.*, 422 A.2d at 624 (emphasis added). Moreover, that interference must induce or cause a third person not to enter into the prospective relationship. *Id.*

Appellant recognizes that Albert did not interfere with any prospective contractual relationship between Santiago and herself. Instead, she relies upon language found in footnote six of *Yaindl:* "Of course, an action for intentional interference with the performance of a contract lies even though the contract interfered with is terminable at the will of the parties." *Id.*, 422 A.2d at 618. Thus, she asserts, an action for intentional interference with the performance of a contract by a third person exists even when the relationship is at-will employment.

We cannot accept appellant's argument for a number of reasons. First, the language from the footnote quoted above is dicta because it was not essential to the holding of the panel. Second, appellant brings no cases to our attention where this doctrine has been extended to the ambit of at-will employment. Thus, **we are constrained to hold that an action for intentional interference with performance of a contract in the employment context applies only to interference with a prospective employment relationship whether at-will or not, not a presently existing at-will employment relationship.** Therefore, we affirm the trial court's decision to grant Albert's preliminary objection as to Count III of the appellant's second amended complaint. *Hennessy,* 708 A.2d at 1278–1279 (emphasis added).

■ In the present case, our review of the record reflects that Appellee does not allege any interference with a prospective employment relationship, nor does he establish that he was not an at-will employee. As we previously stated, "an action for intentional interference with performance of a contract in the employment context applies only to interference with a prospective employment relationship whether at-will or not, not a presently existing at-will

employment relationship." *Hennessy,* 708 A.2d at 1279. Accordingly, Appellants' claim has merit and we are constrained to reverse the order of the trial court in this regard and to sustain the preliminary objections in the form of a demurrer as to the third cause of action specified in Appellee's amended complaint.[1]

Order affirmed in part and reversed in part. Case remanded for further proceedings. Jurisdiction relinquished.

MUNDY, J., files a Concurring and Dissenting Opinion.

CONCURRING AND DISSENTING OPINION BY MUNDY, J.:

I agree with the majority's decision to affirm the trial court in overruling Appellants' preliminary objections as to the cause of action for wrongful termination. As the trial court correctly concluded and the majority artfully points out, "[Appellants'] right to a demurrer . . . is not clear and free from doubt" because "[a] good faith argument has alleged that [Appellee's] dismissal violated public policy." Trial Court Opinion, 11/05/09, at 7.

I, however, respectfully disagree with the majority's decision to reverse the trial court and to sustain Appellants' preliminary objections as to the cause of action

---

1. To the extent Appellee argues that *Hennessy* was wrongly decided, that other decisions of this Court provide more persuasive authority to allow a cause of action for intentional interference with contractual relations, or that our Supreme Court may "embrace" other legal authority if presented with this issue, we observe that we must follow the decisional law established by our own Court. *Blumenstock v. Gibson,* 811 A.2d 1029, 1039 (Pa.Super.2002), *appeal denied,* 573 Pa. 714, 828 A.2d 349 (2003). Unless or until *Hennessy* is overturned by an *en banc* panel of this Court, or by a decision of the Pennsylvania Supreme Court, it continues to be viable precedent for this Court and for the courts of common

pleas. *Id. See also Sorber v. American Motorists Ins. Co.,* 451 Pa.Super. 507, 680 A.2d 881, 882 (1996) (holding that, even though petition for allowance of appeal was pending before the Pennsylvania Supreme Court, decision remains binding precedent as long as the decision has not been overturned by our Supreme Court). Moreover, we note that the language alluded to by Appellee as persuasive in both *Yaindl* and *Curran v. Children's Service Center,* 396 Pa.Super. 29, 578 A.2d 8, 13 (1990), is merely dicta and, therefore, these two prior decisions have no bearing on the matter presently before this Court, or on the precedential authority of the more recently decided *Hennessy.*

for intentional interference with a contractual relationship. Contrary to the majority's conclusion, my review of the applicable law does not reflect that this Court is constrained by the holding in *Hennessy v. Santiago*, 708 A.2d 1269 (Pa.Super.1998). Rather, from my analysis of the law in this area, I discern that different panels of this Court have made contradictory rulings regarding a plaintiff's ability to bring an action for intentional interference with a contractual relationship in an at-will employment context. Therefore, I do not agree with the majority that *Hennessy, supra,* represents the decisional law of this Court.

As an initial matter, I recognize, as the majority notes, that the language cited in footnote six of *Yaindl v. Ingersoll–Rand Co.*, 281 Pa.Super. 560, 422 A.2d 611, 618 (1980) is mere dicta and, therefore, not binding upon this Court. In *Yaindl, supra,* footnote six is merely a component of a broader discussion wherein a panel of this Court opined that the cause of action for wrongful discharge is a more specific example of the cause of action for intentional interference with a contractual relationship. As this point was not essential to the panel's holding, it is dicta. *See Valles v. Albert Einstein Medical Center,* 758 A.2d 1238, 1246 (Pa.Super.2000) (noting that a statement that is not necessary to the disposition of the case is dicta and, therefore, not binding authority).

Nevertheless, I disagree with the majority's characterization of the language in *Curran v. Children's Service Center,* 396 Pa.Super. 29, 578 A.2d 8, 13 (1990), as dicta. In *Curran, supra,* a panel of this Court considered whether an at-will employee could bring an action for intentional interference with a contractual relationship against the supervisor who terminated him. As a preliminary issue necessary in determining whether the employee had posited a legally cognizable cause of action, the panel determined that a cause of action for intentional interference with a contractual relationship existed in the at-will employment context. *Id.* The panel unequivocally proclaimed, "[a] cause of action for intentional interference with a contractual relationship may be sustained even though the employment relationship is at-will." *Id.* Only after making this determination did the panel proceed to conclude that the supervisor was an agent of the employer and, thus, "there [was] no third party against whom an action for intentional interference with a contractual relationship [could] lie." *Id.* Had the panel not determined that an at-will employee may bring an action for intentional interference with a contractual relationship, the panel would never have reached the question of whether the supervisor was an appropriate third party. As such, I reason that the panel's preliminary determination is essential to its ruling and, therefore, should not be considered dicta to the holding in *Curran.*[1]

Moreover, *Curran, supra,* refers to Comment g of Section 766 of the Restatement (Second) of Torts, which explicitly addresses contracts terminable at-will. Our Supreme Court has adopted Section 766. *See Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466, 470 (1979).

---

1. In determining whether the Pennsylvania Supreme Court is likely to recognize the tort of intentional interference with a contractual relationship in an at-will employment context, a Federal District Court for the Eastern District of Pennsylvania noted that the preliminary determination in *Curran* was essential to its holding. *Brooks v. Systems Manufacturing Corp.*, 2004 WL 2028755, *6 (E.D.Pa.2004). The Court stated, in *Curran*, the Pennsylvania Superior Court "[held] that recovery for intentional interference with performance of an at-will employment contract was actionable." *Id.* (emphasis added).

Comment g of Section 766 states the following in pertinent part.

A similar situation exists with a contract that, by its terms or otherwise, permits the third person to terminate the agreement at will. Until he has so terminated it, the contract is valid and subsisting, and the defendant may not properly interfere with it. The fact that a contract is terminable at will, however, is to be taken into account in determining damages that the plaintiff has suffered by reason of its breach.

One's interest in a contract terminable at will is primarily an interest in future relations between the parties, and he has no legal assurance of them. For this reason, an interference with this interest is closely analogous to interference with prospective contractual relations.

Restatement (Second) of Torts § 766, Comment g. I recognize that while our Supreme Court has formally adopted Section 766, it has not addressed the current issue or specifically mentioned the application of Comment g. Thus, I concede our Supreme Court's adoption of Section 766 did not necessarily mandate that the *Hennessy* Court follow the precepts of Comment g. *See Lance v. Wyeth,* 4 A.3d 160, 169 (Pa.Super.2010) (noting that this Court must adhere to the principles established by our Supreme Court until our Supreme Court alters its approach). Nonetheless, I find it notable that the decision in *Hennessy* failed to address Section 766, Comment g, or the *Curran* decision.

Moreover, this Court's "jurisprudential task is to effectuate the decisional law of [our Supreme Court], not to restrict it through curtailed readings of controlling authority." *In re Estate of Stephano,* 602 Pa. 527, 981 A.2d 138, 142 (2009), *quoting Commonwealth v. Millner,* 585 Pa. 237, 888 A.2d 680, 693 (2005). It is well settled that "[a]s an intermediate appellate court, this Court is obligated to follow the precedent set down by our Supreme Court. It is not the prerogative of [this Court] to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to [our] Supreme Court." *Lance, supra* at 169. As such, because of our Supreme Court's adoption of Section 766 as controlling authority and the precedent of this Court recognizing Comment g of the same section, I believe it was incumbent upon the panel in *Hennessy* to explain its departure from the path established by our Supreme Court. In failing to do so, the *Hennessy* decision not only contradicts a prior panel of this Court, but the decision also commits the jurisprudential error which our Supreme Court has explicitly denounced. In departing from Comment g, the *Hennessy* decision enunciates a new precept of law. *See Lance, supra* at 169.

Given our Supreme Court's precedent regarding Section 766 as well as this Court's own contradictory precedent citing Comment g of Section 766, I would conclude that the *Hennessy* decision is not controlling upon this Court. For all of the foregoing reasons, I believe that the state of this Court's decisional law as to the issue before us is in conflict. Therefore, I would affirm the trial court's decision to overrule all preliminary objections.