**Cappello v. CBH20 General Partner, LLC d/b/a Camelback Ski Corp.**

C.P. of Monroe County, no. 149 CV 2008.

*Hugh M. Emory,* for plaintiffs.
*Jason R. Ohliger,* for defendants.

ZULICK, *J.,* December 17, 2010—This case arises from injuries received on a chair lift at Camelback Ski Area on February 22, 2007. While dismounting a chair, plaintiff Phillip Capello was struck in the eye when the chair's safety bar descended from its upright position. Mr. Cappello signed a "rental agreement and agreement not to sue" ("the release") before using the slopes that day. The release is the subject of the motion for summary judgment now before the court.

The Capellos filed suit on January 8, 2008. Defendants ("Camelback") filed an answer and new matter on February 6, 2008. Camelback asserted the defense of release from liability and has now moved for summary judgment. The parties submitted briefs and argument was held on December 6, 2010.

## DISCUSSION

The Pennsylvania Rules of Civil Procedure permit a party to move for summary judgment after the close of pleadings. Pa.R.C.P. 1035.2. Summary judgment is appropriate only in those cases in which: (1) the record shows that there is no genuine issue of material fact, and (2) the moving party is entitled to judgment as a matter of law. *Erie Ins. Co. v. Abbott Furnace Co.,* 972 A.2d 1232, 1237 (Pa. Super. 2009). Summary judgment is therefore proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *Lance v. Wyeth,* 4 A.3d 160, 163 (Pa.Super.

2010).

The moving party has the burden of proving that no genuine issues of material fact exist. The trial court must examine the record in a light most favorable to the nonmoving party and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Moyer v. Teledyne Cont'l Motors, Inc.,* 979 A.2d 336, 342-43 (Pa. Super. 2009) (citation omitted). The burden is therefore placed upon the moving party to prove that there is no issue of material fact. *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 204, 412 A.2d 466, 468-69. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment. *Lance,* 4 A.3d at 163.

Phillip Cappello admits that he signed the release. The release provides, in pertinent part:

> I also hereby acknowledge, accept, and assume all risks of injury to any parts of this user's body that can and do exist in the sport of skiing and/or snowboarding. I agree that I will not sue Camelback (either on my own behalf or on behalf of my spouse, child or ward) for injuries or damages relating to skiing and/or snowboarding and/or the use of this equipment or any of Camelback's facilities, even if I contend that Camelback was negligent or otherwise at fault.

> I have carefully read this agreement and release of liability and fully understand its contents. I am aware this is a release of liability and a contract between myself and Camelback for any and all injury I may suffer while using Camelback's facilities and I sign it of my own free will. Defendant's motion for summary

judgment, exhibit "A."

Camelback argues that Mr.Cappello has released Camelback from liability by signing the release.

Mr. Cappello contends that the release does not bar his suit because a falling safety bar is not a risk inherent to skiing. He argues that the release "is so broad that, if enforceable, Mr. Cappello would not (sic) be barred from suit even if he slipped and fell on spilled liquid in the lobby of the lodge...." Cappello brief, p. 5. He argues that the release only applies to claims resulting from a "risk inherent in the activity of skiing." *Id.*

Camelback responds by saying that the release does bar this claim, citing the recent decision of our Supreme Court in *Chepkevich v. Hidden Valley Resort, L.P.*, 607 Pa. 1, 2 A.3d 1174 (Pa. 2010). The plaintiff in *Chepkevich* also signed a written release as part of her season ski pass. She was skiing with her six-year-old nephew, and asked the lift attendant to stop the chair lift twice, once to allow her to position herself and her nephew in front of the chair, and again when the chair reached them for pickup. The lift attendant stopped it once to allow them to get into position, but did not stop it again. The nephew had difficulty in getting into the chair as it came through the loading area, and the plaintiff fell off the lift while trying to assist her nephew, causing her injury.

Chief Justice Castille, writing for the court, reviewed the elements necessary for a valid exculpatory agreement, citing *Topp Copy Products, Inc. v. Singletary*, 533 Pa. 468, 626 A.2d 98 (Pa. 1993):

It is generally accepted that an exculpatory clause is valid where three conditions are met. First, the clause

must not contravene public policy. Secondly, the contract must be between persons relating entirely to their own private affairs and thirdly, each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion. *Singletary* at 470 (citing *Princeton Sportswear Corp. v. H & M Assoc.*, 507 A.2d 339 (Pa. 1986); *Employers Liab. Assurance Corp. v. Greenville Bus. Men's Assoc.*, 224 A.2d 620 (Pa. 1966).

The *Chepkevich* court found that the release the plaintiff signed was not a contract of adhesion. The court noted that the release had been signed to obtain a season ski pass and was for recreational purposes. It was not unconscionable: "The signer is a free agent who can simply walk away without signing the release and participating in the activity, and thus the contract signed under such circumstances is not unconscionable." *Chepkevich* at 28-29, 2 A.3d at 1190-1191. The *Chepkevich* court also found that the clause did not contravene public policy and was between private parties dealing with their private affairs.

The release arises from a similar context. Phillip Cappello signed the release in exchange for the use of the Camelback ski facilities. It was a private agreement between the ski area and a skier. The release was therefore a valid exculpatory agreement. Cappello concedes as much.

This does not end the inquiry. In *Dilks v. Flohr Chevrolet*, 411 Pa. 425, 192 A.2d 682 (1963), our Supreme Court noted that even if an exculpatory agreement is valid, it will not be enforced unless the language clearly relieves a party of liability for negligence. The *Dilks* court held that in interpreting such clauses:

the guiding standards are that: 1) the contract language must be strictly construed; 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties; 3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and 4) the burden of establishing the immunity is upon the party invoking protection under the clause. *Dilks*, at 434, 192 A.2d at 687.

The language in the release meets these standards, just as the release in *Chepkovich* did. Again the release stated:

> I agree that I will not sue Camelback (either on my own behalf or on behalf of my spouse, child or ward) for injuries or damages relating to skiing and/or snowboarding and/or the use of this equipment or any of Camelback's facilities, even if I contend that Camelback was negligent or otherwise at fault.

Mr. Cappello was using Camelback's facilities while he was injured; he was struck by the falling chair lift bar while dismounting from the ski lift. He argues, however, that the defective chair lift bar was not an inherent risk of skiing, and that as in *Crews*, this risk could be removed "without altering the nature of the sport." Cappello brief, page 7 Therefore, he contends the release is not enforceable.

The *Crews* case arose out of a collision involving an underage intoxicated snowboarder. The Superior Court held that the risk of colliding with an underage drinker on the slopes was not a risk "inherent to skiing" and refused to enforce an exculpatory agreement or to find assumption

of the risk. *Id.* at 105.

Cappello acknowledges that the Supreme Court has stated in *Hughes v. Seven Springs Farm, Inc.*, 563 Pa. 501, 762 A.2d 339 (Pa. 2000), that "boarding the ski lift, riding the lift up the mountain, alighting from the lift, skiing from the lift to the trail" are all activities that are part of downhill skiing. *Id.* at 344. The court also stated in *Chepkevich* that "use of the ski lift and the attendant dangers are inherent to the sport of skiing, and so were properly encompassed by the exculpatory language of the Release." *Chepkevich* at 1194.

While Mr. Cappello argues that the improperly maintained bar was not an inherent risk of the sport, he cites no authority which would allow *Chepkevich* to be distinguished. He also cites no cases placing clear limits on the validity of releases from non-inherent risks other than the *Crews* decision. However, *Crews* did not involve the use of a ski lift. Plaintiff quotes Justice Baer's concurring opinion in *Chepkevich* in which he opined that to the extent the release in that case could be read to include risks not inherent to the sport of skiing, he would find that it contravenes the public policy animating the Skier's Responsibility Act. *Chepkevich*, at 1200.[1] However, Justice Baer's statement is dictum and not binding on this court.

In his opinion for the majority in *Chepkevich*, Chief Justice Castille stopped short of considering the validity

---

1. It must be noted that the *Yacoub* court stated that the hospital could have filed a preliminary objection to request a more specific pleading and it chose not to do so. However, the court held that the complaint was sufficiently specific to provide the hospital with notice of the appellant's claims even though the purported agents or ostensible agents were not identified by name. *Id.*

of releases from non-inherent risks. The court found that the use of the ski lift by the plaintiff was an inherent risk of the sport. The agreement at issue in the *Chepkevich* case released Hidden Valley from "inherent and *other risks.*" *Id.* at 17 (emphasis added). *Chepkevich* thus did not hold whether or not exculpatory agreements could release liability for non-inherent risks. The Skier's Responsibility Act, 42 Pa.C.S. § 7102(c), requires that the injury at issue arise from an inherent risk of the sport in order for the assumption of risk defense to apply. Chief Justice Castille did not import that requirement to his analysis of the release's validity.

The use of the chair bar was part and parcel of using the lift and an inherent risk of the sport. The chair and its bar were facilities a skier uses to get to the top of the mountain. Camelback's negligence in maintaining the bar was covered by language of the exculpatory agreement. The release will therefore be enforced.

Numerous other holdings of Pennsylvania courts are in accord. See, e.g. *Zimmer v. Mitchell & Ness*, 385 A.2d 437 (Pa. Super. 1978), affirmed per curiam, 416 A.2d 1010 (Pa. 1980) (upholding release of liability language in rental agreement for ski equipment); *Kotovsky v. Ski Liberty Operating Corp.,* 603 A.2d 633 (Pa. Super. 1992), allocator denied, 609 A.2d 168 (Pa. 1992) (upholding release of liability language in agreement signed by ski race participant); *Makar v. Wilderness Recreations*, 124 Civil 1993, C.P. Monroe, affirmed 664 A.2d 1066 (Pa. Super. 1995) (barring snowmobile operator who signed release from bringing claim for injuries from accident in which snowmobile went through safety fence); *Macioce v. Camelback Ski Corp.,* No. 20 Civil 1999, (C.P. Monroe, O'Brien, J., May 10, 1999) (barring snowtubing customer

who signed release from bringing suit for injuries suffered when snowtube traveled down cliff and through mesh netting). See *Hathi v. Camelback Ski Corp.*, No. 5704 Civil 2007 (C.P. Monroe, Miller, J., August 24, 2010) (upholding release where snowtuber sustained injury in falling out of tube, allegedly due to Camelback's negligence relating to placement of protective hay bales). Federal court decisions have also found exculpatory releases valid under Pennsylvania law. See *Savarese v. Camelback Ski Corp.*, 417 F. Supp. 2d 663 (M.D. Pa. 2005) (granting summary judgment for Camelback where plaintiff unable to mount lift chair due to raised seat was struck and injured by lift chair, but had signed waiver); *Ruocco v. Camelback Ski Resort*, Civil No: 3: CV-02-0393(M.D.Pa. 2003) (granting summary judgment where plaintiff skied off one of the slopes, off the trail and struck a tree, but had signed a release).

In conclusion, the release was a valid exculpatory agreement under Pennsylvania law and the claim brought in the complaint was covered by its reach. Skiers and snowboarders who sign such releases therefore take on both the risks of the sport and the risk that the provider of the facilities may not properly maintain the area and the lifts. Summary judgment will be granted accordingly.

## ORDER

And now, December 17, 2010, upon consideration of the parties' briefs and arguments. Defendants' motion for summary judgment is granted.